**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| YURIRIA DIAZ, as an individual and on behalf of all others similarly situated, | No. 22-56209 |
| | D.C. No. 8:19-cv-00303-PSG-MAA |
| *Plaintiff-Appellee*, | |
| v. | |
| MACYS WEST STORES, INC., DBA Macy's, AKA Macy's Retail Holdings, LLC, an Ohio corporation, | OPINION |
| *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, Chief District Judge, Presiding

Argued and Submitted November 17, 2023
Pasadena, California

Filed May 10, 2024

2          DIAZ V. MACYS WEST STORES, INC.

Before: Jay S. Bybee, D. Michael Fisher,[*] and Kenneth K. Lee, Circuit Judges.

Opinion by Judge Bybee

### SUMMARY[**]

### Arbitration

The panel affirmed the district court's order compelling arbitration of Yuriria Diaz's individual California Private Attorneys General Act ("PAGA") claims, vacated the order to the extent it compels arbitration of her non-individual claims, and remanded to the district court to dispose of the nonarbitrable claims consistent with the California Supreme Court's decision in *Adolph v. Uber Technologies, Inc.*, 532 P.3d 682 (Cal. 2023), and the agreement of the parties.

Diaz sued her former employer, Macy's West Stores, Inc., under PAGA for violations of California's labor code. Macy's appealed the district court's order compelling arbitration of all Diaz's claims.

The panel concluded that it had jurisdiction to review the district court's order as a final decision with respect to arbitration. The district court compelled arbitration without explicitly dismissing the underlying claims. The district

---

[*] The Honorable D. Michael Fisher, United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

court's denial of Diaz's requested stay, combined with the language of closure, overcame any presumption that the action was stayed pending the arbitration. The panel concluded that the district court intended its administrative closure of the case to be a final decision.

The panel looked to the parties' agreement to determine whether the parties consented to arbitration of Diaz's PAGA claims. The panel held that at the time of contracting, the parties consented only to arbitration of individual claims relating to Diaz's own employment. The agreement's language was strongly indicative of an intent to exclude any amalgamation of employees' claims—including non-individual PAGA claims—from arbitration.

The panel rejected Macy's request that the district court on remand be instructed to dismiss the non-individual claims because under *Adolph*, those claims cannot be dismissed. The panel remanded with instruction to treat the nonarbitrable non-individual claims consistent with *Adolph*, anticipating that the parties will, per their agreement, request a stay with respect to those claims.

## COUNSEL

Ryan H. Wu (argued), Melissa Grant, and Robert J. Drexler, Jr., Capstone Law APC, Los Angeles, California; Armond M. Jackson and Andrea Fernandez-Jackson, Jackson Law APC, Irvine, California; for Plaintiff-Appellee.

Felix Shafir (argued) and Peder K. Batalden, Horvitz & Levy LLP, Burbank, California; Fermin H. Llaguno and Pejmon D. Bodaghi, Littler Mendelson PC, Irvine, California; Catherine E. Sison and Michael Christman, Macy's Inc. Law Department, St. Louis, Missouri; for Defendant-Appellant.

Andrew B. Davis, Lehotsky Keller LLP, Austin, Texas; Drew F. Waldbeser, Lehotsky Keller LLP, Atlanta, Georgia; Steven P. Lehotsky, Chief Counsel for Regulatory Litigation, Lehotsky Keller LLP, Washington, D.C.; for Amici Curiae National Retail Federation and Retail Litigation Center Inc.

## OPINION

BYBEE, Circuit Judge:

Plaintiff-Appellee Yuriria Diaz sued her former employer, Defendant-Appellant Macy's West Stores, Inc. ("Macy's") under California's Private Attorneys General Act ("PAGA") for violations of California's labor code. Macy's appeals the district court's order compelling arbitration of all Diaz's claims. It requests that we vacate that order in part, ordering arbitration of only the individual PAGA claims—those that relate to Diaz's own employment—while ordering the non-individual claims—

claims involving code violations against other Macy's employees—dismissed. We agree with Macy's that under the parties' arbitration agreement, only Diaz's individual PAGA claims should be arbitrated. But the California Supreme Court's recent decision in *Adolph v. Uber Technologies, Inc.*, 532 P.3d 682 (Cal. 2023), forecloses Macy's request that the non-individual claims be dismissed.

We therefore affirm the district court's order in part and vacate in part. Diaz's individual PAGA claims were properly ordered to arbitration, but we vacate that portion of the order compelling arbitration of the non-individual claims. We remand to the district court to treat the nonarbitrable claims consistent with *Adolph* and the agreement of the parties.

I. FACTUAL AND PROCEDURAL BACKGROUND

PAGA was enacted to provide for broader enforcement of California's labor code against employers. *Kim v. Reins Int'l Cal., Inc.*, 459 P.3d 1123, 1127 (Cal. 2020). It authorizes "aggrieved employees" to seek civil penalties for code violations as agents of the California Labor and Workforce Development Agency (LWDA) or its departments. Cal. Lab. Code § 2699(a). The aggrieved employee must notify his employer and the LWDA of the potential violations. The LWDA may investigate and, as appropriate, bring its own action. If the LWDA fails to proceed, the employee may pursue the PAGA claims as the State's representative. *Id.* § 2699.3(a)(2). The employee may bring a PAGA claim "on behalf of himself or herself and other current or former employees." *Id.* § 2699(a). We have referred to these different types of claims under PAGA as

6        DIAZ V. MACYS WEST STORES, INC.

"individual" and "non-individual" claims.[1] *See, e.g., Johnson v. Lowe's Home Centers, LLC*, 93 F.4th 459, 462 (9th Cir. 2024).

Yuriria Diaz began working for Macy's as a store clerk in October 2012. During the hiring process, the two parties entered into an agreement by which Diaz consented to a four-step process for resolving employment-related disputes. The final step was arbitration, which "replaces any right [the employee] might have to go to court." Nevertheless, the arbitration agreement included a waiver that precluded arbitration of "consolidate[d] claims of different Associates" and "class or collective action[s]." In June 2020, Macy's reduced its workforce and terminated Diaz's employment.

Prior to her termination, in January 2019, Diaz sued Macy's in California Superior Court, alleging various violations of the California Labor Code. Shortly thereafter, Macy's removed the case to federal district court. Diaz then amended her complaint, limiting her claims to violations of PAGA—both individual claims with respect to Macy's

---

[1] There has been some confusion in describing these different claim types. Courts sometimes refer to them as "individual" and "representative" claims respectively. But in one sense all PAGA claims are representative: similar to *qui tam* actions, the aggrieved employee brings the suit as the representative of the State, even if the suit is limited to alleged violations affecting only the employee. *See Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1916 (2022); *Kim*, 459 P.3d at 1127. To avoid this confusion and to adhere to our own past practice, we will use the term "individual PAGA claim" to mean a claim in which the aggrieved employee is prosecuting code violations only as they affect her personally. We use the term "non-individual PAGA claim" to describe claims where the aggrieved employee is prosecuting code violations affecting other employees.

conduct toward her and non-individual claims having to do with Macy's conduct toward other employees.

The parties agreed to stay the proceedings pending the Supreme Court's decision in *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022), a case that similarly involved both individual and non-individual California PAGA claims. Following the Court's decision, Macy's moved for the district court to order Diaz's individual claims to arbitration and to dismiss the non-individual claims, as the Supreme Court had done. Diaz opposed the motion, arguing that none of her PAGA claims were subject to the arbitration agreement. She requested that the district court stay adjudication of the PAGA claims pending the California Supreme Court's decision in *Adolph v. Uber Technologies, Inc.*, a case that would consider whether dismissal of non-individual claims is required when individual PAGA claims are ordered to arbitration. In other words, *Adolph* would decide whether the Supreme Court's approach in *Viking River* was, as a matter of California law, correct under PAGA.

The district court granted Macy's motion in part by ordering arbitration of Diaz's individual PAGA claims. But it also ordered the parties to arbitrate her non-individual PAGA claims. It reasoned that the arbitration agreement's broad language must be interpreted to include non-individual claims, and nothing in the class action waiver or anywhere else in the agreement indicated that the parties meant to exclude such claims from the scope of the agreement. The court then denied Diaz's motion to stay "as moot" and "close[d]" the case "as there [were] no remaining claims before the Court." Macy's brought this appeal.

8     DIAZ V. MACYS WEST STORES, INC.

## II.  STANDARD OF REVIEW

We review a district court's decision to grant or deny a motion to compel arbitration de novo. *Bushley v. Credit Suisse First Bos.*, 360 F.3d 1149, 1152 (9th Cir. 2004). "The interpretation and meaning of contract provisions are questions of law" and are also reviewed de novo. *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 936 (9th Cir. 2001).

## III.  APPELLATE JURISDICTION

At the outset, we must determine whether we have jurisdiction to consider this appeal. The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, authorizes appellate review of orders relating to arbitration in limited circumstances. *See id.* § 16. Since the enactment of § 16, we have treated its parameters on appellate review as jurisdictional.[2] *See, e.g.*, *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1022 (9th Cir. 1991).   Diaz contends that none of the enumerated circumstances permitting our review are present here and so

---

[2] We have stated that the FAA "does not confer independent jurisdiction on the federal courts." *Pac. Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1021 (9th Cir. 1991). But because it references and informs the scope of the underlying grants of appellate jurisdiction at 28 U.S.C. §§ 1291 and 1292, we have given the terms of § 16 jurisdictional effect. *See id.* at 1021–22 (finding jurisdiction under § 1292 but holding that § 16's prohibition of review over certain interlocutory appeals limited that jurisdiction). We have read § 16(a) to define certain categories of decisions with respect to arbitration that qualify as final orders under 28 U.S.C. § 1291, thus confirming our jurisdiction. *See Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023). Although we have occasionally used a convenient shorthand by saying that we have jurisdiction under § 16, we speak more precisely when we say that we have jurisdiction under § 1291, as specified in § 16. *See, e.g.*, *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1008 (9th Cir. 2023).

we lack jurisdiction. On the other hand, Macy's assures us of our jurisdiction by arguing that the district court's order was "a final decision with respect to an arbitration," *id.* § 16(a)(3), or, alternatively, an order "denying a petition . . . to order arbitration," *id.* § 16(a)(1)(B). We conclude that we have jurisdiction to review the order as a final decision with respect to arbitration.

"[F]inality is to be given a practical rather than a technical construction." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 171 (1974) (internal quotation marks and citation omitted). A judicial decision on an arbitration dispute is "final" for purposes of 9 U.S.C. § 16(a)(3) when it "ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86 (2000) (internal quotation marks and citations omitted). "[A]n order compelling arbitration may be appealed if the district court dismisses all the underlying claims, but may not be appealed if the court stays the action pending arbitration." *MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 7 (9th Cir. 2014). Sometimes the district court's order is not explicit with respect to dismissal or retention of the claims. Where the district court compels arbitration without explicitly dismissing the underlying claims, we have a "rebuttable presumption" that the order stays the action and is thus not appealable. *Id.* at 9. Even "[a]n order administratively closing a case is a docket management tool that has no jurisdictional effect." *Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005). That is, administrative closure does not automatically render a decision final (or non-final). *See id.* Finality is determined instead by the context in which the order was issued. *MediVas*, 741 F.3d at 9.

| 10 | DIAZ v. MACYS WEST STORES, INC. |
|---|---|

Here, the district court compelled arbitration without explicitly dismissing the underlying claims. The court compelled arbitration "in accordance with the [parties'] arbitration agreement." The Macy's-Diaz agreement specified that "If a party files a lawsuit in court to resolve claims subject to arbitration, both agree that the court shall dismiss the lawsuit and require the claim to be resolved through [arbitration]." The agreement further provided that in the event the suit involved arbitrable and nonarbitrable claims, the parties would ask the court to stay the nonarbitrable claims pending resolution of the arbitrable claims. *See* 9 U.S.C. § 3. The district court concluded that all of Diaz's claims were arbitrable and denied Diaz's request for a stay because it was moot. The district court "close[d]" the case "as there [were] no remaining claims before the Court." Although the district court did not expressly state whether the underlying claims were dismissed or stayed, Macy's argues that the denial of Diaz's requested stay, combined with the language of closure, overcomes any presumption that the action is stayed pending the arbitration. We agree.

In *MediVas*, we presumed that litigation was stayed pending the arbitration because the same motion which had requested the compulsion had also requested a stay. *MediVas*, 741 F.3d at 8. We reasoned that by granting the motion as to the arbitration, and remaining silent on the motion to stay, the district court likely intended to grant the motion as to the stay. *Id.* Here, by contrast, Macy's requested that the district court compel arbitration of Diaz's individual claims and dismiss her non-individual claims, while Diaz argued that no PAGA claims should be immediately litigated and asked the court to stay the litigation pending a decision in *Adolph*. The district read the

arbitration agreement as covering all of Diaz's PAGA claims, thus rendering her request for a stay—as an alternative to the dismissal of the non-individual claims requested by Macy's—unnecessary. The court's forthright rejection of the need for the case to come back before it is sufficient to rebut the presumption that the litigation was stayed. Considering this context together with the court's statement that "there are no remaining claims before the Court," "the most reasonable inference" is that the district court intended its administrative closure of the case to be a final decision.[3] *Id.* We therefore have jurisdiction pursuant to 9 U.S.C. § 16(a)(3) and 28 U.S.C. § 1291 to hear this appeal.

## IV. ARBITRABILITY OF THE NON-INDIVIDUAL CLAIMS

The Federal Arbitration Act recognizes the utility of arbitration—both to the parties and to the economy of the judicial system. In the FAA, Congress "simply require[d] courts to enforce previously negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989); *see* 9 U.S.C. § 4 (providing that courts may issue an order that "arbitration proceed in the manner provided for in [the parties'] agreement"). Not all claims, however, are subject to arbitration. "The [FAA], after all, does not mandate the

---

[3] Diaz counters that the case could find its way back to the district court for several reasons, including to confirm, vacate, or modify the arbitration award. *See* 9 U.S.C. §§ 9–11. Thus, she insists, there is potentially more to do than simply execute the judgment, and so the decision cannot be considered final. But the possibility that the parties may file a new proceeding at the conclusion of the arbitration process "does not vitiate the finality" of orders that dispose of the previous case on the merits. *See Green Tree,* 531 U.S. at 86.

arbitration of all claims, but merely the enforcement—upon the motion of one of the parties—of privately negotiated arbitration agreements." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). The framework for judicial enforcement of arbitration agreements is the terms of the agreement itself, for it defines the scope of the parties' consent to arbitrate their disputes. *See Viking River*, 142 S. Ct. at 1918 (explaining how the "right to enforce arbitration agreements" is necessarily tethered to fulfillment of the agreement on its terms as a matter of consent); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) ("Arbitration is strictly 'a matter of consent . . . .'" (quoting *Volt Info. Scis., Inc.*, 489 U.S. at 479)).

We must determine from the agreement between Macy's and Diaz whether the parties consented to arbitration of Diaz's PAGA claims. In construing the scope of an arbitration agreement, we will "apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210 (9th Cir. 1998). California contract law requires that the words of a contract be given "their ordinary and popular sense, rather than according to their strict legal meaning." Cal. Civ. Code § 1644. Contracts are to be interpreted holistically, *id.* § 1641, so as "to give effect to the mutual intention of the parties as it existed at the time of contracting," *id.* § 1636.

Article 2 of the Macy's-Diaz agreement provides that "all employment-related legal disputes" are subject to arbitration. The one relevant limitation on that capacious language is a waiver in Article 11(f)(ii) which provides that "[t]he Arbitrator shall not consolidate claims of different

Associates into one proceeding. Nor shall the Arbitrator have the power to hear an arbitration as a class or collective action." The district court read these provisions to apply broadly to all of Diaz's PAGA claims. It found her individual claims fell easily within the contract and that, although class or collective actions were excluded from arbitration, the agreement did not except non-individual PAGA claims from arbitration. In interpreting Article 11's waiver provision, the district court looked to the Supreme Court's 2022 decision in *Viking River*, where the Court distinguished between class actions and non-individual PAGA claims. 142 S. Ct. at 1920–21. The district court took this inequivalence and proceeded to formulaically insert it into the parties' agreement: if "class actions" are not equal to "non-individual PAGA claims," then "non-individual PAGA claims" are not waived by a provision waiving "class actions." The problem is that words have "no arbitrary and fixed meaning like a symbol of algebra or chemistry." *Pearson v. State Soc. Welfare Bd.*, 353 P.2d 33, 39 (Cal. 1960). By treating the term "class or collective action" like a fixed algebraic variable, the district court ignored the fact that the Supreme Court's distinction from *Viking River* provides little insight into what Macy's and Diaz intended by their agreement, signed in 2012. *See Swenson v. File*, 475 P.2d 852, 854–55 (Cal. 1970) (holding that changes in law subsequent to contracting "are not ordinarily deemed to become part of the agreement unless [the agreement's] language clearly indicates this to have been the intention of the parties").

We must interpret the arbitration agreement free from such after-acquired developments, looking rather to the terms of the agreement and any indication of their meaning at the time the parties entered it. We are convinced that at

14          DIAZ V. MACYS WEST STORES, INC.

the time of contracting, the parties consented only to arbitration of claims relating to Diaz's own employment. The agreement is replete with references to the employee herself and disputes "relating to [her] employment." Diaz was told that the arbitral process is available for "*your* dispute[s]" based on "*your* situation." The agreement also discusses disputes as "asserted by the Associate against the Company." These are but a couple of examples of the bilateral relationship between employer and individual employee that the arbitration agreement presumes will frame all arbitrable claims. Our conclusion is reinforced by the exclusion of class and collective actions from arbitration. Although the waiver does not specifically reference non-individual PAGA claims, it does no violence to the agreement to read non-individual PAGA claims as an instance of a class or collective action.

Considered as a whole, the agreement's language is strongly indicative of an intent to exclude any amalgamation of employees' claims—including non-individual PAGA claims—from arbitration. Definitionally, non-individual claims do not relate to the aggrieved employee's employment but to the conduct of the employer vis-à-vis its other employees. *See Viking River*, 142 S. Ct. at 1916. For that reason, California courts have read language similar to the words used in the agreement before us to preclude non-individual arbitration. *See*, *e.g.*, *Nelsen v. Legacy Partners Residential, Inc.*, 144 Cal. Rptr. 3d 198, 202, 210–11 (Cal. Ct. App. 2012) (noting that "[n]o language evince[d] an intent to allow class arbitration" where an agreement referred solely to the employee and employer); *see also Walker v. Scoobeez*, No. CV 18-06108 AB (RAOx), 2018 WL 11321932, at *3 (C.D. Cal. Aug. 22, 2018) (holding that an agreement did not permit class arbitration where it

"repeatedly referr[ed] to Plaintiff in the singular and ma[de] no reference to . . . other employees' claims or disputes").[4]

In light of this context and the language of individual disputes used throughout the instrument, we conclude that the parties did not contemplate that non-individual PAGA claims would be subject to arbitration per their agreement. We therefore affirm the district court's order compelling arbitration only as to Diaz's individual PAGA claims—which were clearly within the scope of the agreement's terms as a dispute relating to Diaz's employment. We vacate the order as to the non-individual claims because the parties did not consent to arbitration of those claims.

## V. DISPOSITION OF THE NON-INDIVIDUAL CLAIMS

Our conclusion as to the arbitrability of Diaz's individual PAGA claims is only half of the victory that Macy's seeks. It asks us to further instruct the district court on remand to

---

[4] Macy's points us to judicial interpretations—all unpublished—of similar and contemporaneous class action waivers holding that such waivers extend to non-individual PAGA claims. Both the District Court for the Central District of California and the California Court of Appeal have interpreted the very waiver language used by Macy's to preclude arbitration of such claims. *See Quevedo v. Macy's, Inc.*, 798 F. Supp. 2d 1122, 1141 (C.D. Cal. 2011); *Teimouri v. Macy's, Inc.*, No. D060696, 2013 WL 2006815, at *16–17 (Cal. Ct. App. May 14, 2013) (unpublished). We too have assumed that a provision waiving arbitration of "class or collective action[s]" applies to non-individual PAGA claims. *Sierra v. Oakley Sales Corp.*, 637 F. App'x 368, 369 (9th Cir. 2016) (unpublished). Although these cases do not bind us as precedent, they are probative of what parties who used the same words as the parties before us likely meant with respect to the arbitrability of non-individual PAGA claims. Indeed, two of these cases show what Macy's itself thought it was consenting to because it was a party to the cases involving the same stock arbitration agreement.

16 DIAZ V. MACYS WEST STORES, INC.

dismiss the non-individual claims, following the example of the Supreme Court in *Viking River*. 142 S. Ct. at 1925. We cannot, consistent with fundamental principles of federalism, do as Macy's requests.

In deciding that the nonarbitrable non-individual claims in *Viking River* had to be dismissed, the Supreme Court was making its own judgment about California law. "[A]s we see it," the Court opined, "PAGA provides no mechanism to enable a court to adjudicate non-individual PAGA claims once an individual claim has been committed to a separate proceeding." *Id.* The Court read PAGA's standing requirement to mean that "a plaintiff can maintain non-individual PAGA claims in an action only by virtue of also maintaining an individual claim in that action." Drawing attention to the state-law character of this holding, Justice Sotomayor added in concurrence: "Of course, if this Court's understanding of state law is wrong, California courts, in an appropriate case, will have the last word." *Id.* (Sotomayor, J., concurring).

California, in fact, has had the last word. When the parties submitted their briefs in this case, the California Supreme Court had before it a case that invited it to determine whether the Supreme Court's treatment of non-individual claims was consistent with a correct interpretation of PAGA. That case, *Adolph v. Uber Technologies, Inc.*, has since been decided. 532 P.3d 682 (Cal. 2023). The California Supreme Court held, as a matter of California law, that the Supreme Court's interpretation of PAGA standing in *Viking River* was incorrect. *Id.* at 689–92. As the California Supreme Court explained, "a worker becomes an 'aggrieved employee' with standing to litigate claims on behalf of fellow employees upon sustaining a Labor Code violation committed by his or her employer." *Id.* at 691. Accordingly,

"[s]tanding under PAGA is not affected by enforcement of an agreement to adjudicate a plaintiff's individual claim in another forum." *Id.*; *see also id.* at 693 ("When a case includes arbitrable and nonarbitrable issues, the issues may be adjudicated in different forums while remaining part of the same action."); 694 ("'Even though *Viking [River]* requires the trial court to bifurcate and order individual PAGA claims to arbitration when an appropriate arbitration agreement exists, the individual PAGA claims in arbitration remain part of the same lawsuit as the representative claims remaining in the court. Thus, plaintiffs are pursuing a single PAGA action on behalf of [themselves] and other current or former employees, albeit across two fora.'" (quoting *Piplack v. In-N-Out Burgers*, 305 Cal. Rptr. 3d 405, 413 (Ct. App. 2023)). *Adolph*'s holding is the final and binding authority on the meaning of PAGA. *See Montana v. Wyoming*, 563 U.S. 368, 377 n.5 (2011) ("The highest court of each State, of course, remains 'the final arbiter of what is state law.'" (citation omitted)). We have recently acknowledged the binding nature of that decision. *Johnson*, 93 F.4th at 464. The result is that under *Viking River*, Diaz's non-individual PAGA claims cannot be referred to arbitration, as the district court ordered, and after *Adolph*, those claims cannot be dismissed, as Macy's requests.

The combination of *Viking River* and *Adolph* places Macy's in an odd position. Having successfully shown that the arbitration agreement in this case does not encompass non-individual PAGA claims, Macy's has opened the way for Diaz to bring those claims in a separate court proceeding that Macy's surely did not desire. But there is no other tenable outcome. The California Supreme Court has held that the ability to bring non-individual PAGA actions cannot be waived by agreement, because such a waiver would

frustrate the enforcement objectives of PAGA. *Iskanian v. CLS Transportation Los Angeles, LLC*, 327 P.3d 129, 149 (Cal. 2014), *abrogated on other grounds by Viking River*, 142 S. Ct. at 1924. An aggrieved employee must have a forum in which to bring non-individual PAGA actions. Because the agreement between Macy's and Diaz forecloses arbitration of those claims, court is the only option remaining.[5]

A final question remains. What is the district court to do with the non-individual PAGA claims in this case if they can neither be arbitrated nor dismissed? *Adolph* contemplates that nonarbitrable claims may either proceed in the judicial forum in parallel with the arbitrated claims or be stayed pending completion of the arbitration. 532 P.3d at 693. We observe that the arbitration agreement between Macy's and Diaz addresses just the situation in which the parties now find themselves. It requires that the party who files a lawsuit raising both arbitrable and nonarbitrable claims request a stay of litigation for the nonarbitrable claims pending arbitration of the arbitrable claims. We therefore remand to the district court with instruction to treat the nonarbitrable non-individual claims consistent with *Adolph*, anticipating that the parties will, per their agreement, request a stay with respect to those claims.

---

[5] In anticipation of *Adolph*, Macy's preemptively argued in its briefs that any interpretation of California law that is contrary to *Viking River* would be preempted by the FAA. Given several intervening developments that followed the district court's judgment (including our decision in *Johnson*), Macy's may refine and renew these arguments before the district court. We express no views on the merits of such arguments.

## VI. CONCLUSION

The order of the district court is **AFFIRMED** as to the arbitration of Diaz's individual PAGA claims but **VACATED** as to the arbitration of her non-individual claims. We **REMAND** to the district court to dispose of the nonarbitrable claims consistent with the California Supreme Court's decision in *Adolph* and the agreement of the parties. Each party shall bear its own costs.

**AFFIRMED** in part; **VACATED** in part; **REMANDED.**